# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNITED STATES OF AMERICA,

v.                                    Criminal No. 3:19-CR-51

SHAWN M. BARBER,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's APPEAL OF MAGISTRATE JUDGE DECISION (ECF No. 25), which challenges the sentence imposed by the Magistrate Judge for probation violations. For the reasons set forth below, the Court affirms the sentence imposed by the Magistrate Judge.

## BACKGROUND

Shawn Barber ("Barber") was charged in June 2017 with simple possession of marijuana and cocaine, which are Class A Misdemeanors. See ECF No. 1. After being fully advised of her right to being tried and sentenced by a district judge, Barber signed a form waiving those rights. See ECF No. 3. On that form, Barber, inter alia, (1) "[w]aive[d] [her] right to trial, judgment and sentencing by a United States district judge"; (2) "[c]onsent[ed] to being tried, judged, and sentenced by a United States magistrate judge"; and (3) "[w]aiv[ed] [her] right to trial by jury before either a United States district judge or a United

States magistrate judge." Id. The Government also had to "consent[] to Defendant being sentenced by a United States magistrate judge." Id.

Following this waiver, Barber pled guilty to both misdemeanors before Magistrate Judge Roderick Young. ECF No. 2. The parties agreed to pre-judgment probation under 18 U.S.C. § 3607 whereby Barber was placed on probation for one year with various conditions, including periodic drug testing. ECF No. 5. In other words, no judgment would be entered if Barber complied with the conditions of her probation for one year.

However, Barber did violate her probation. She tested positive for marijuana on several occasions in 2017. ECF No. 7. As a result, her probation was modified to require her to participate in a drug treatment program. ECF No. 6. She was referred to such a program, and failed to report for drug testing on several occasions. ECF No. 7. She also had failed other drug tests. Id.

Thereafter, the Probation Officer filed a petition for revocation of Barber's probation, and a revocation hearing was held before Magistrate Judge Young on May 7, 2018. ECF Nos. 7, 12. Barber pled guilty to violating her probation and judgment on the initial cocaine and marijuana possession offenses was entered. ECF No. 13. Barber was sentenced to 18 months' probation, with conditions of mental health evaluation, substance abuse treatment

and testing, and attendance at 90 Narcotics Anonymous ("N.A.") meetings in 90 days. ECF No. 15.

On February 1, 2019, the Probation Officer filed a second petition alleging that Barber had once again violated the conditions of her probation. ECF No. 16. That petition charged four probation violations: (1) driving under a suspended license;[1] (2) marijuana use; (3) failure to pay special assessment; and (4) failure to attend 90 N.A. meetings in 90 days. Id. Magistrate Judge Young held an initial hearing on Barber's probation violations on February 19, 2019, and a final hearing on February 22, 2019. ECF Nos. 27, 38.

At the February 19 hearing, Magistrate Judge Young heard testimony from Barber's mother, in which she explained her daughter's violations. See Feb. 19 Hr'g Tr. 8-17 (ECF No. 38). Barber's mother testified that: (1) Barber had transportation difficulties because her driver's license had been revoked; (2) Barber's Probation Officer had told her (the mother) to wait on paying the special assessment; (3) Barber struggled with mental health issues; (4) Barber lived in a crime-ridden area; and (5) Barber had made efforts at working (which were complicated by her lack of a driver's license). Id. At the end of the hearing,

---

[1]     The Government agreed to drop this violation at the February 22, 2019 revocation hearing. ECF Nos. 22, 37.

Magistrate Judge Young remanded Barber to custody pending her final hearing a few days later. Id. at 25.

At the February 22 hearing, Barber pled guilty to the remaining three violations of the conditions of her probation.[2] See Feb. 22 Hr'g Tr. at 10 (ECF No. 27). The Government asked for three months' incarceration, followed by no supervision, because Barber had not complied with the terms of her probation and because she had "breach[ed] [the Court's] trust." Id. at 12-13. The Government argued that such a sentence, which was at the low end of the Guidelines, was "sufficient" and satisfied the "factors of 3553(a)." Id. Barber sought home detention (with electronic monitoring) to be served at her parents' home. Id. at 22-23. Barber argued that various factors explained her probation violations: that it was difficult to attend 90 N.A. meetings in 90 days because her driver's license had been revoked; that her obligations to her children made complying with the 90-meeting condition difficult; that she was also required to have a job; and that she has struggled with mental health issues. Id. at 13-20. Additional time in prison, she argued, was unnecessary and would "exacerbate" her mental health issues. Id. at 22.

After hearing the evidence and argument, Magistrate Judge Young sentenced Barber to three months' imprisonment with no

---

[2]    The parties did not dispute that the Guidelines range for Barber's probation violation was 3-9 months. ECF No. 30 at 3.

supervision to follow. Id. at 24-26. In imposing this sentence, Magistrate Judge Young considered the Guidelines, Barber's past performance on probation, arguments of counsel, and the Section 3553 factors. Id. at 24-25. His reasoning for the sentence was as follows:

> After considering the foregoing, I find that it is -- the only appropriate sentence is to revoke the defendant's term of probation, and to sentence her to a term of three months of imprisonment. And I'm sentencing her to the low end of the guidelines due to her anxiety, her depression, her anorexia and some other mitigating factors that her attorney has raised in his argument by the evidence that he's put forward.

Id. at 25.

Barber now appeals the sentence imposed by Magistrate Judge Young. The parties have fully briefed the matter, and the Court heard oral argument on April 8, 2019.

## LEGAL FRAMEWORK FOR APPEALS FROM JUDGMENTS OF MAGISTRATE JUDGES

When a defendant consents to be tried and sentenced by a magistrate judge, 18 U.S.C. § 3742(h) governs this Court's review of the sentence imposed by the magistrate judge. It reads:

> An appeal of an otherwise final sentence imposed by a United States magistrate judge may be taken to a judge of the district court, and this section shall apply (except for the requirement of approval by the Attorney General or the Solicitor General in the case of a Government appeal) as though the appeal were to a court of appeals from a sentence imposed by a district court.

18 U.S.C. § 3742(h) (emphasis added); see also 18 U.S.C. § 3742(e) (describing court of appeals' review of sentence). Fed. R. Crim. P. 58(g)(2)(B) permits a defendant to appeal a magistrate judge's sentence to a district judge within 14 days. And, when that appeal is made, "[t]he defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D); see also United States v. Bursey, 416 F.3d 301, 305-06 (4th Cir. 2005) (describing the Fed. R. Crim. P. 58 standard).

As interpreted by the Fourth Circuit post-Booker, the Court of Appeals reviews sentences imposed by the district court for "reasonableness using an abuse of discretion standard." United States v. Shephard, 892 F.3d 666, 670 (4th Cir. 2018) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). That review requires, first, that the Court of Appeals

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

United States v. Zuk, 874 F.3d 398, 409 (4th Cir. 2017) (citing Gall, 552 U.S. at 51). If there is a challenge to the Guidelines

calculation, the district court's factual findings are reviewed for clear error and the legal conclusions are reviewed de novo. United States v. Dodd, 770 F.3d 306, 309 (4th Cir. 2014) (citation omitted). Second (assuming no procedural error), the Court of Appeals considers the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard" that takes into account "the totality of the circumstances." Zuk, 874 F.3d at 409; see also United States v. Lambert, 594 F. Supp. 2d 676, 680 (W.D. Va. 2009) (in petty offense case, holding that "[a] district judge should therefore affirm a sentence imposed by a magistrate judge unless it is unreasonable or resulted from significant procedural error").

Lastly, review of probation revocation sentences is even more deferential to the district court. See, e.g., United States v. Gibbs, 897 F.3d 199, 203-05 (4th Cir. 2018); United States v. Thompson, 595 F.3d 544, 546-48 (4th Cir. 2010). That is, "while original sentences are reviewed for 'reasonableness,' we have recognized that even an unreasonable revocation sentence may stand unless it is plainly unreasonable." Gibbs, 897 F.3d at 204 (quoting United States v. Crudup, 461 F.3d 433, 438-39 (4th Cir. 2006)) (emphasis in original). A revocation sentence must still meet "both procedural reasonableness and substantive reasonableness, but on the more deferential basis noted." Gibbs, 461 F.3d at 204 (emphasis in original).

The Court will review the revocation sentence imposed by Magistrate Judge Young under the foregoing standard.

## DISCUSSION

Barber raises two general arguments in her appeal. First, she argues that 18 U.S.C. § 3742(h), which governs the appeals of sentences imposed by magistrate judges, is unconstitutional to the extent that it does not require the District Court to perform de novo review of the sentence. Second, she argues that the Court should reverse the Magistrate Judge's sentence of three months' imprisonment, either under de novo review or under the deferential standard of review.

### A. Constitutionality of 18 U.S.C. § 3742(h)

Barber argues that the statute governing appeals of magistrate judge sentences is unconstitutional to the extent that it does not require the District Court to perform de novo review of the Magistrate Judge's sentence. That is so, says Barber, because: (1) sentencing on a Class A misdemeanor (as here) is at the "core of the judicial power"; (2) an Article III judge must make the "ultimate determination" of the exercise of this power de novo; and (3) the statute governing appeals of magistrate judge sentences mandates that the District Court perform a review that is more deferential than de novo review. ECF No. 30 at 3-10. Although Barber consented to sentencing before the Magistrate Judge, she argues that she waived only the right to have the

proceedings conducted by a district judge, but did not waive *de novo* review of the ultimate sentence imposed by the Magistrate Judge. *Id.* at 9-10. The Government argues that the review provisions are constitutional; that Barber's arguments rest on a "flawed premise that Article III compels a particular standard of review" in this context; and that Barber consented to being sentenced by the Magistrate Judge and cannot now do an "end-run" around that consent. ECF No. 37 at 4-8.

To assess this constitutional argument, it is helpful to understand the framework for the Magistrate Judge's jurisdiction over this case. The constitutional issues raised by Barber will then be assessed.

### (1) Statutory Framework

The parties agree that the Magistrate Judge had jurisdiction over Barber's misdemeanor case. See ECF No. 30 at 1; see generally ECF No. 37. That jurisdiction arises out of several interrelated statutory provisions. The first provision is 28 U.S.C. § 636(a)(3), which authorizes magistrate judges "to conduct trials under section 3401, title 18, United States Code, in conformity with and subject to the limitations of that section." The second provision is 28 U.S.C. § 636(a)(5), which authorizes the magistrate judge "to enter a sentence for a Class A misdemeanor in a case in which the parties have consented." (emphasis added).

The cross-referenced section in 18 U.S.C. § 3401(a) states that, when "designated to exercise such jurisdiction by the district court," "any United States magistrate judge shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors. . . ."[3] But for all misdemeanors other than petty offenses (not at issue here), the defendant "may elect. . .to be tried before a district judge." Id. § 3401(b). Before proceeding to try a misdemeanor, the magistrate judge must "carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a district judge and that he may have a right to trial by jury before a district judge or magistrate judge." Id. Then, the defendant must "expressly and specifically waive[] trial, judgment, and sentencing by a district judge" in writing or orally before the magistrate judge may proceed. Id. Barber concedes that she consented to trial and sentencing by magistrate judge, but argues that the fact of consent does not eliminate the need for de novo review of the ultimate sentence to make 18 U.S.C. § 3742(h) constitutional. See ECF No. 30 at 9-10; ECF No. 3 (consent form).

Lastly, when a defendant consents to trial and sentencing before a magistrate judge, the magistrate judge also has

---

[3]     This District's Local Crim. R. 5 authorizes magistrate judges "to perform all duties authorized or allowed to be performed by United States magistrate judges by the United States Code and any rule governing proceedings in this Court."

jurisdiction over the defendant's probation. "The probation laws shall be applicable to persons tried by a magistrate judge under this section, and such officer shall have power to grant probation and to revoke, modify, or reinstate the probation of any person granted probation by a magistrate judge." 18 U.S.C. § 3401(d). At oral argument, counsel for Barber agreed that Barber's consent to sentencing by the Magistrate Judge also applies to sentencing on a probation violation because the probation violation is part of her sentence.

In sum, there is no dispute that, under the statutory provisions discussed above, the Magistrate Judge in this case had jurisdiction to impose a sentence, including a sentence for probation violations. The issue now becomes whether this Court must review de novo the sentence imposed by the Magistrate Judge.

### (2) **Barber Waived Any Right She Had to De Novo Review**

Barber argues that several decisions of the Supreme Court of the United States establish that, under the Article III of the United States Constitution, this Court must perform a de novo review of the sentence imposed by the Magistrate Judge. She argues that, because 18 U.S.C. § 3742(h) requires this Court to review the Magistrate Judge's sentence in the same manner as a court of appeals reviews a district court's sentence (i.e. not fully de novo), Section 3742(h) violates Article III of the Constitution.

That contention lacks merit. As the Supreme Court has made clear, Barber's consent changes the constitutional calculus. And, it cannot be said that the provision of 18 U.S.C. § 3742(h) respecting judicial review before a district judge in the context of a Class A misdemeanor implicates structural concerns against which Article III protects. Accordingly, Barber's constitutional argument fails.

### (a) The Supreme Court Decisions

Barber relies primarily on the decisions in United States v. Raddatz, 447 U.S. 667 (1980) and Peretz v. United States, 501 U.S. 923 (1991) in support of her position. Raddatz was a felony case in which the district judge had referred a suppression motion to the magistrate judge. 447 U.S. at 669. The referral provision at issue in Raddatz, 28 U.S.C. § 636(b)(1)(B), did not permit the magistrate judge to "make a final and binding disposition" of certain dispositive motions, like a motion to suppress. Id. at 673. Instead, the magistrate judge makes a recommended finding, and the district judge makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. (quoting statute) (emphasis in original). The Court concluded that Congress did not intend for the district judge to conduct a de novo evidentiary hearing; rather, the district judge was to perform a de novo determination on the record produced before the magistrate. Id. at

674-76. The Court rejected an Article III challenge to this provision, holding:

> although the statute permits the district court to give to the magistrate's proposed findings of fact and recommendations such weight as [their] merit commands and the sound discretion of the district judge warrants. . .that delegation does not violate Art. III so long <u>as the ultimate decision is made by the district court</u>.

<u>Id.</u> at 683 (emphasis added).

In <u>Peretz v. United States</u>, 501 U.S. 923 (1991), the Supreme Court decided an Article III challenge in a felony case in which the defendant consented to the magistrate performing the jury <u>voir dire</u>.[4] The Supreme Court first noted that, over time, Congress had increased the responsibilities of magistrate judges, including giving them jurisdiction to oversee misdemeanor cases. <u>See</u> 501 U.S. at 930-31. But, "a critical limitation on [the magistrate judge's] expanded jurisdiction is consent." <u>Id.</u> at 931 (citation omitted).

The Supreme Court held that "[t]here is no constitutional infirmity in the delegation of felony trial jury selection to a magistrate when the litigants consent." <u>Id.</u> at 936. In so doing,

---

[4]    <u>Peretz</u> decided a question left open in <u>Gomez v. United States</u>, 490 U.S. 858 (1989), which had held, on statutory grounds, that absent the defendant's consent, the district court's referral of felony jury <u>voir dire</u> to a magistrate violated the Federal Magistrates Act. <u>Peretz</u> considered "whether the defendant's consent warrants a different result." 501 U.S. at 925.

the Court explained that "the defendant's consent significantly changes the constitutional analysis." Id. at 932. Criminal defendants can waive many basic rights, and waiving the right to having a district judge conduct voir dire is one that can be waived. See id. at 936-37. There was no structural Article III problem because the "ultimate decision" in jury selection rests with the district judge and is "under the district court's total control and jurisdiction." Id. at 937 (citation omitted). However, the Court observed that nothing in the statutory provision at issue "preclude[d] a district court from providing the review that the Constitution requires." Id. at 939. At the same time, the Court made clear that "Raddatz established that, to the extent 'de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties.'" Id. at 939 (quoting United States v. Peacock, 761 F.2d 1313, 1318 (9th Cir. 1985)) (emphasis added).

More recently, in Wellness Int'l. Network, Ltd. v. Sharif, 135 S. Ct. 1932 (2015), a bankruptcy case, the Supreme Court summarized its Article III jurisprudence respecting the effect of consent. It held:

> The lesson of Schor, Peretz, and the history
> that preceded them is plain: The entitlement
> to an Article III adjudicator is "a personal
> right" and thus ordinarily "subject to
> waiver," Schor, 478 U.S., at 848, 106 S.Ct.
> 3245. Article III also serves a structural
> purpose, "barring congressional attempts 'to

> transfer jurisdiction [to non-Article III
> tribunals] for the purpose of emasculating'
> constitutional courts and thereby prevent
> [ing] 'the encroachment or aggrandizement of
> one branch at the expense of the other.' "
> Id., at 850, 106 S.Ct. 3245 (citations
> omitted). But allowing Article I adjudicators
> to decide claims submitted to them by consent
> does not offend the separation of powers so
> long as Article III courts retain supervisory
> authority over the process.

135 S. Ct. at 1944 (emphasis added). In assessing whether a

litigant may waive the Article III rights or whether structural

concerns prevent such a waiver, the Supreme Court weighed:

> the extent to which the essential attributes
> of judicial power are reserved to Article III
> courts, and, conversely, the extent to which
> the non-Article III forum exercises the range
> of jurisdiction and powers normally vested
> only in Article III courts, the origins and
> importance of the right to be adjudicated, and
> the concerns that drove Congress to depart
> from the requirements of Article III.

Id. (internal citation and quotation omitted). After considering

these factors, the Court concluded that permitting bankruptcy

litigants to waive Article III consideration of certain types of

claims did not complicate Article III structural concerns. See id.

at 1944-45. Relevant to this analysis was the fact that the parties

had the option to invoke an Article III forum, there was no "free-

floating authority to decide claims traditionally heard by Article

III courts," and the entire process took place under the district

court's control and jurisdiction. See id.

**(b) Analysis**

After considering the foregoing authority and the parties' arguments, the Court concludes that Barber waived her right to a full _de novo_ sentencing before the District Court when she consented to sentencing before the Magistrate Judge, and that 18 U.S.C. § 3742(h) does not run afoul of Article III.

First, Barber unambiguously consented to full adjudication of her Class A misdemeanor, including sentencing, before the Magistrate Judge.[5] See ECF No. 3; 18 U.S.C. § 3401(b). The Supreme Court has repeatedly held that "the defendant's consent significantly changes the constitutional analysis." Peretz, 501 U.S. at 932; Sharif, 135 S. Ct. at 1944. As a "personal right," adjudication of certain types of claims before a district court may be waived. See Sharif, 135 S. Ct. at 1944. The statutory provisions permitting the Magistrate Judge to preside over Class A misdemeanor cases require a very careful review by the Magistrate Judge of the rights (including sentencing before a district judge) that the defendant is waiving. See 18 U.S.C. § 3401(b). Consent to such procedures must be explicitly given, and cannot be implied.

---

[5]    The Court notes that the provision governing the review of magistrate judge sentences (now codified at 18 U.S.C. § 3742(h)) has been in the statute since 1987. See Pub. L. No. 100-182, § 4, Dec. 7, 1987, 101 Stat. 1266 (adding this provision, which, at the time, was subsection (f) of the statute). In other words, Barber has no plausible argument that she did not realize the standard of review applicable to the magistrate's sentence when she consented.

*Id.* That is, in order to proceed before a magistrate judge on a Class A misdemeanor, the defendant must give a clear statement that he understands the rights he gives up. Thus, the statute ensures that the defendant gives a voluntary and intelligent waiver of the right to proceed before a district judge.

Second, 18 U.S.C. § 3742(h) does not violate "structural" concerns of Article III. In coming to this conclusion, the Court first considers "the extent to which the essential attributes of judicial power are reserved to Article III courts." *Sharif*, 135 S. Ct. at 1944. Barber is correct that sentencing is an exercise of a core judicial power. *See* United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995). However, in *Johnson*, the district court had delegated to the probation officer the "final authority to determine" restitution, and that was improper. *See id.* at 809. That is not so in this case. The final authority to review a sentence under 18 U.S.C. § 3742(h) rests with the District Court (the Article III Court).

The defendant has a statutory right to appeal the sentence of the Magistrate Judge, *see* 18 U.S.C. § 3742(h), and the District Court reviews the sentence for procedural and substantive reasonableness, including reviewing legal challenges to the court's Guidelines interpretations *de novo*. *See* Dodd, 770 F.3d at 309. In other words, Section 3742(h) does not vest the "final authority" to determine the sentence in the Magistrate Judge.

Instead, the District Court has the "final authority," Johnson, 48 F.3d at 809, and can make the "ultimate decision" of whether the sentence is lawful and reasonable. Raddatz, 47 U.S. at 683. Thus, the "essential attributes of judicial power" remain in the Article III court.

In the structural analysis, the Court also considers whether the "non-Article III forum exercises the range of jurisdiction and powers normally vested only in Article III courts, the origins and importance of the right to be adjudicated, and the concerns that drove Congress to depart from the requirements of Article III." Sharif, 135 S. Ct. at 1944. While it is true that magistrate judges can have broad jurisdiction in Class A misdemeanor cases, Congress required that both parties consent before such jurisdiction may be exercised. And, here too, the jurisdiction of the non-Article III court is exercised under the control of the Article III court. Thus, there is no structural impediment to the approach chosen by Congress in enacting 18 U.S.C. § 3742(h).

Finally, there is no indication that Congress chose to grant magistrate judges expanded powers in this context in order to aggrandize Article I courts at the expense of Article III courts. Rather, Congress acted to assist Article III courts with their "bloated dockets," subject to the review and control of the Article III court. See Peretz, 501 U.S. at 928-29; see also Sharif, 135 S. Ct. at 1945-46. In sum, the review provision of 18 U.S.C. §

3742(h) does not raise Article III structural issues that would render the statute unconstitutional where, as here, consent is required and knowingly given. See Sharif, 135 S. Ct. at 1945 n.10.

Contrary to Barber's view, Raddatz and Peretz do not require de novo review in this context. First, those decisions involve felony criminal cases, and this case involved misdemeanor charges as to which, as the law clearly permits, Barber gave informed consent to be tried and sentenced before a magistrate judge. Second, neither Raddatz nor Peretz (nor any other authority cited in Barber's brief) holds that Article III mandates de novo review of the sentence imposed by a magistrate judge when the party consented to be sentenced by the magistrate judge. Instead, in Peretz, the Supreme Court wrote: "Raddatz established that, to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." Peretz, 501 U.S. at 939 (citation omitted) (emphasis added). The waiver shown by the record in this case is the antithesis of a request for de novo review.[6]

_____

[6]    While the parties did not cite this case in their briefing or at oral argument, it is also worth noting that the Fourth Circuit has rejected an Article III challenge to the statutes permitting magistrate judges conducting misdemeanor trials and sentencing. United States v. Ferguson, 778 F.2d 1017, 1019 (4th Cir. 1985). Ferguson did not deal with the district court's review of the magistrate's sentence, but it lends some support to the constitutionality of the sentencing scheme at issue here.

For the foregoing reasons, the Court rejects the constitutional challenge to 18 U.S.C. § 3742(h).

## B. The Sentence of the Magistrate Judge is Affirmed

Wholly apart from the constitutional argument, Barber contends argues that, either under de novo or deferential review, the three-month sentence cannot stand. The Court does not agree.

### (1) The Sentence is Affirmed Under Deferential Standard

For the reasons outlined above, de novo review of the Magistrate Judge's sentence is not required. Accordingly, analysis of Barber's appeal will proceed under the deferential standard for reviewing revocation sentences by a district court. See Gibbs, 897 F.3d at 203-205. Barber argues that the sentence cannot stand because the Magistrate Judge committed procedural error. See ECF No. 30 at 15-18. That is so, Barber argues, because the Magistrate Judge failed to respond to two non-frivolous mitigation arguments. First, says Barber, the Magistrate Judge did not respond to her argument that the Guidelines did not require imprisonment, but rather would have permitted a sentence of home confinement. Id. at 17. Second, she takes the view that the Magistrate Judge did not respond to the argument that her driver's license had been suspended, which affected her ability to meet her probation obligations. Id.

In United States v. Gibbs, the Court of Appeals set out the controlling framework for assessing whether a revocation sentence is procedurally and substantively reasonable. 897 F.3d at 204.

> A revocation sentence passes procedural muster if it is supported by "a sufficient explanation so that we may effectively review the reasonableness of the sentence," which must encompass "an assurance that the sentencing court considered the [applicable sentencing] factors with regard to the particular defendant before [it] and also considered any potentially meritorious arguments raised by the parties with regard to sentencing." Moulden, 478 F.3d at 657. And a sentence passes substantive muster if the totality of the circumstances indicates that the court had a "'proper basis for its conclusion' that the defendant should receive the sentence imposed." United States v. Slappy, 872 F.3d 202, 207 (4th Cir. 2017) (quoting Crudup, 461 F.3d at 440).

Id. (alterations in original). There is a presumption that revocation sentences within the Guidelines are reasonable and "less explanation is required for [a Guidelines] sentence than for a sentence that departs from the Guidelines." Id.

It is clear that the Magistrate Judge's sentence in this case is procedurally reasonable.[7] To begin, it is doubtful that either ground of mitigation that forms the basis for Barber's procedural

---

[7]    Barber does not challenge the substantive reasonableness of the sentence. That is a wise choice, because the "totality of the circumstances indicates that the court had a proper basis for its conclusion that the defendant should receive the sentence imposed." Gibbs, 897 F.3d at 204 (internal quotations and citations omitted).

challenge can pass the frivolity threshold. The parties and Magistrate Judge Young quite clearly perceived that the Guidelines did not require incarceration. Nothing in the record suggests otherwise, and it is frivolous to advance that notion as a ground for mitigation. Nor can it be seriously said that "transportation difficulties" are a non-frivolous ground for attending the requisite number of therapy sessions. Acceptance of that notion would afford many, if not most, defendants an excuse from compliance with that fairly routine requirement. And, somehow, most defendants, even those in rural areas of this district, do not raise the excuse offered here. Instead, they find ways to comply. At least, where, as here, that excuse is tendered with no material evidentiary support, it cannot rightfully be considered a non-frivolous mitigation position.

But, even if these two notions are regarded as non-frivolous, there is no procedural defect in Barber's sentence. Reviewing the transcript of the February 22 revocation hearing (ECF No. 27), it appears that Barber raised, quite briefly, the issue of her license suspension and resulting inability to drive. Id. at 14. She also raised the fact that the Guidelines allow for home confinement for her offense. Id. at 22-23. The sentencing transcript discloses that, during the presentation of the defendant's position, the Magistrate Judge was fully aware of all mitigation arguments. Magistrate Judge Young stated that he had reviewed the petition,

the advisory guidelines, and listened to arguments of counsel where Barber's mitigation was discussed. Id. at 24-25. He then listed the § 3553 factors but did not expressly make a finding on each one. Id. 24-25. He then imposed the sentence as follows:

> After considering the foregoing, I find that it is -- the only appropriate sentence is to revoke the defendant's term of probation, and to sentence her to a term of three months of imprisonment. And I'm sentencing her to the low end of the guidelines due to her anxiety, her depression, her anorexia and some other mitigating factors that her attorney has raised in his argument by the evidence that he's put forward.

Id. at 25. While Magistrate Judge Young did not expressly mention Barber's suspension of the driver's license or that he could sentence Barber to home confinement, a review of the record discloses that he was mindful of those arguments when sentencing Barber to the lowest Guideline sentence when her record would have warranted a much greater sentence. Magistrate Judge Young also mentioned several other mitigating facts, like her depression and anorexia. In any event, to reverse a revocation sentence, the Magistrate Judge must have imposed a "plainly unreasonable" sentence, and this low-end Guidelines sentence certainly does not fit into that category.[8] See id. at 206.

---

[8]     To the extent that Barber relies on Slappy and Thompson, the more recent Gibbs opinion makes clear that those cases do not alter the Court's analysis here. See Gibbs, 897 F.3d at 206. As the Court in Gibbs pointed out, in imposing the revocation sentence in Thompson, the district court's sentence "was supported by no

In sum, the Magistrate Judge's sentence is procedurally reasonable, and accordingly, is affirmed.

### (2) The Sentence Is Affirmed Under De Novo Review

Even assuming that the Court is required to engage in a de novo review of the sentence (which it is not), the sentence would be affirmed. Under this standard of review, Barber argues that a sentence of time-served was appropriate because of her efforts at rehabilitation, her future prospects to turn her life around, the nature and circumstances of her violation, and the fact that the Guidelines do not require imprisonment. See ECF No. 30 at 11-14. The Government, on the other hand, argues that the Magistrate Judge's three-month sentence is appropriate under de novo review because of Barber's repeated probation violations, her resistance of help from the probation office, her breach of the Court's trust, and the fact that non-imprisonment sentences have not worked for Barber. See ECF No. 37 at 11-12.

---

explanation whatsoever." Gibbs, 897 F.3d at 206 (emphasis in original). And, in Slappy, instead of imposing an in-Guidelines sentence as requested by the defendant, the district court varied upward to the statutory maximum sentence without addressing the defendant's arguments for an in-Guidelines sentence. Gibbs, 897 F.3d at 206. Neither of those situations is present here, where the Magistrate Judge imposed a low-end Guidelines sentence and gave an explanation—including citing mitigating aspects of Barber's record—for the sentence.

Considering the factors in 18 U.S.C. § 3553(a), a three-month sentence, which is the low-end Guidelines sentence, is a most lenient one.

In assessing the nature and circumstances of the offense at issue in the revocation proceeding, it is appropriate to note that, on her original conviction for relatively minor drug offenses, Barber was initially sentenced to a deferred-judgment sentence (which would have allowed her to have no judgment of conviction entered had she met the conditions of her probation for one year). Barber responded by continuously violating the terms of her probation, including by failing numerous drug tests and failing to show up at drug testing. Magistrate Judge Young gave Barber further leniency before revoking her probation and sentencing her to prison. But, Barber breached the Court's leniency and trust. She, indeed, made a farce of the leniency and trust.

It is true that Barber's history and characteristics reflect that she has struggled with mental health and possible anorexia, which she asserts is the reason that she smokes marijuana. For a time, she was living in public housing in a dangerous area with her two sons. Her driver's license was suspended as a result of this case, which, she says, made it hard for her to get to substance abuse treatment and her N.A. meetings. Barber appears to have a loving family and her parents have offered to take her in whenever she needs. While those facts could be mitigating to some degree,

it is more important that Barber has been given significant opportunities to get help and yet continues to violate the terms of probation. When leniency and trust do not work, incarceration is appropriate.

When assessing the types of punishment available, the Guidelines call for a 3-9-month term of imprisonment because this is a Grade C probation violation. It is true, as Barber points out, that the minimum term of imprisonment could be served by a term of home confinement. USSG § 7B1.3(c)(1). However, that is not required; and, given Barber's lack of compliance with the terms of her probation, a prison term is appropriate. And, frankly, a term of at least nine months would be warranted.

Finally, a three-month prison term promotes deterrence and protects the public from Barber's lawless behavior. Barber has been given many chances to get help and to avoid prison. Those opportunities, however, have gone unanswered. And, Barber continues to use marijuana. And, all of that is in breach of the trust imposed by the lenient sentence and other leniency accorded Barber. On this record, and in the face of the many breaches of the Court's trust, it is understandable that a sentence of three months' imprisonment be imposed. A greater term of imprisonment could be justified, but Magistrate Judge Young took a measured approach. Accordingly, even if the Court were to review the

sentence _de novo_, the Magistrate Judge's sentence would be affirmed.[9]

## CONCLUSION

For the reasons set forth above, the sentence of the Magistrate Judge is affirmed. And, the Defendant's APPEAL OF MAGISTRATE JUDGE DECISION (ECF No. 25) is denied.

It is so ORDERED.

_/s/_ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 29, 2019

---

[9] In fact, as the Court stated on the record at oral argument, had this Court sentenced Barber in the first instance, it likely would have sentenced her to a longer term of imprisonment. On the record in this case, Barber has demonstrated a refusal to follow Court orders and an utter failure to comply with her probation. While the Court recognizes the challenges and mitigating factors in Barber's life, the Court would also have to consider the applicable factors under 18 U.S.C. § 3553(a), see 18 U.S.C. § 3583(c), and the serious and continuous breaches of the Court's trust in imposing a sentence.